UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOSEPH JACKSON, | : | Case No. 3:10-cv-6 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

## ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and therefore unentitled to disability insurance benefits ("DIB"). (*See* Administrative Transcript ("Tr.") (Tr. 16) (ALJ's decision)).

I.

On December 30, 2004, Joseph Jackson filed an application for DIB benefits, alleging disability since June 30, 2002, due to osteoarthritis in his right knee, pain in his left knee, shoulder pain, pain in his hand, and depression.[1] (Tr. 51, 91).

Upon denial of Plaintiff's claims at the state agency levels, he requested a hearing *de novo* before an ALJ. (Tr. 16). A hearing was held on September 18, 2007, at which Plaintiff appeared with his attorney and testified. (*Id.*) At the hearing, the Plaintiff

---

[1] Plaintiff did not raise any substantive issues concerning his alleged depression, and, therefore, the Court does not address depression here.

amended his application to request a closed period of disability from June 30, 2002 through July 3, 2006.[2] (*Id.*) He returned to work thereafter at a substantial gainful activity level. (*Id.*)

In a decision dated May 28, 2008, the ALJ entered his decision finding that Plaintiff was neither disabled nor entitled to benefits because he could have performed his past relevant work during the closed period. (Tr. 23). That decision became the final determination upon denial of review by the Appeals Council. (Tr. 5, 11).

Plaintiff was 57 years old at the time of the ALJ's May 2008 decision. (Tr. 51, 71). Plaintiff had two years of college for drafting and had past relevant work experience as a mechanical drafter, which is a sedentary, skilled job; he also worked as a building maintenance repairer, which was a medium, skilled job. (Tr. 102, 371). Plaintiff is currently employed as a structural drafter and has been since July 2006. (Tr. 351-52).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through March 2008 based on his earnings history. However, he has returned to work at substantial gainful activity and this will extend the date last insured.

2. The claimant did not engage in substantial gainful activity during the closed period (20 CFR 404.1520(b), 404.1571 *et seq.*).

---

[2] A social security claimant may be awarded benefits for a closed period from the onset of disability through the date it ceases. *Wells v. Comm'r of Soc. Sec.*, No. 1:08cv148, 2009 U.S. Dist. LEXIS 18820, at *6 (S.D. Ohio Mar. 10, 2009). The claimant, however, must be continuously disabled for twelve months to qualify for a closed period of disability.

-2-

3. The claimant has the following "severe" impairments: bilateral knee arthritis with residuals of surgery (including partial knee replacement on the right); bilateral carpal tunnel syndrome and ulnar neuropathy in the left elbow; obesity; arthritis in some digits of the right hand, including the thumb; polyneuropathy; and degenerative disc disease in the cervical spine (20 C.F.R. 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 202, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. Residual functional capacity: After careful consideration of the entire record, the undersigned finds that the claimant during the closed period had the residual functional capacity to: lift up to ten pounds maximum; option to alternate positions every thirty to sixty minutes; not climbing ladders; kneeling, crouching, or crawling; no more than occasional climbing stairs or stooping; and no more than frequent gross and fine manipulation.

6. The claimant could have performed past relevant work during the closed period (20 C.F.R. 404.1565).

7. The claimant was not under a "disability," as defined in the Social Security Act, from June 30, 2002, through July 3, 2006, the amended closed period at issue (20 CFR 404.1520(e)).

(Tr. 19-24).

In sum, the ALJ concluded that Mr. Jackson was not under a disability as defined by the Social Security Regulations and was therefore not entitled to benefits from June 30, 2002 through July 3, 2006, the amended closed period at issue. (Tr. 24).

On appeal, Plaintiff argues that substantial evidence did not support the ALJ's residual functional capacity finding for the closed period.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## A.

Plaintiff claims that the ALJ erred in finding that he was not disabled during the relevant closed period from June 30, 2002 through July 3, 2006.

The record reflects that:

Dr. Kim's office notes from August 28, 2000 through November 29, 2000 show that Plaintiff was seen for complaints of numbness and tingling in his right ring and small finger and nocturnal paresthesias of his left hand. (Tr. 152). He had mild digital parethesias in all of his fingers. (*Id.*) The EMG findings were consistent with carpal tunnel syndrome.

Nine months before his onset date, Plaintiff underwent surgery for impingement syndrome of his left shoulder. (Tr. 200). Additionally, the record contains a June 2001 MRI of Plaintiff's left shoulder that revealed "[m]ild to moderate impingement…[and] [m]ild to moderate tendonosis of the supraspinatus tendon without cuff tear." (Tr. 202). After physical therapy, Plaintiff experienced improvement. (Tr. 154).

On February 18, 2002, Dr. Fasano reported that Plaintiff was having problems with his shoulder. He stated that "[d]ue to the arthritic changes of the shoulder it is not surprising he is having recurrent problems.[3] Concerning his knee, he is only 51 and he is not a good candidate for knee replacement at this time due to his size and age." (Tr. 199). On April 1, 2002, Dr. Fasano recommended an osteotomy for Plaintiff's right knee. *Id.*

---

[3] Specifically, Dr. Fasano reported that Plaintiff had re-aggravated his shoulder while he was rowing. (Tr. 199).

Just two months prior to the onset of his closed period, Plaintiff was seen for increased knee pain. (Tr. 192). X-rays taken in May 2002 showed "[m]oderate to moderately pronounced degenerative arthropathy" in his left knee and "[m]arked degenerative arthropathy" in his right knee with "medial joint space [that was] markedly narrowed...[and a] widening of the lateral joint space." (Tr. 190).[4]

Plaintiff was given approval for a knee procedure in September 2002, and he underwent bilateral knee surgery on December 4, 2002, consisting of a unispacer in the left knee and a partial knee replacement in his right knee. (Tr. 161-163, 186). A September 7, 2004 EMG of his upper extremities "revealed a diffuse sensory motor polyneuropathy[5] that appears primarily demyelinating[6] in nature." (Tr. 318). On October 5, 2004, x-rays of his right hand showed moderately severe arthritis. (Tr. 311). A MRI of his cervical spine was taken on February 9, 2005. It showed "[m]ultilevel degenerative disc disease...with varying degrees of neural compromise including significant central stenosis at multiple levels, greatest at C3-4 and C4-5 followed by C5-6 and significant

---

[4] Plaintiff was seen for his knee pain as early as January 31, 1994. He had injured his knee in a motorcycle accident 20 years prior and had had pain ever since. On June 29, 1994, Dr. Fasano recommended that Plaintiff get another job, and on October 5, 1994 Plaintiff stated that he was trying to get into school so that he could get a sit down type of job. (Tr. 211). On February 27, 1995, Dr. Fasano told Plaintiff that he would need a knee replacement someday. (Tr. 210).

[5] Polyneuropathy is a neurological disorder that occurs when many peripheral nerves throughout the body malfunction simultaneously.

[6] A demyelinating disease is any disease of the nervous system.

foraminal stenosis as well." (Tr. 294). Right knee x-rays, taken on October 17, 2005, revealed degenerative arthritis. (Tr. 274). X-rays of his left knee showed patellofemoral arthritis. (Tr. 262). December 2005 x-rays of his knees demonstrated severe osteoarthritis of the patellofemoral joint in his left knee and degenerative arthritis of his right knee. (Tr. 258).

The claimant has the ultimate burden of proving the existence of a disability. *See* 20 C.F.R. § 404.1512(c); *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997). In this case, Plaintiff presented no medical source opinion evidence that suggested any greater limitations than those provided in the ALJ's residual functional capacity finding.

Plaintiff argues that the ALJ "did not review all of the record [(referencing evidence concerning his left shoulder)] and he did not consider Plaintiff's daily activities during the closed period." (Doc. 11 at 10). However, the ALJ properly noted that the significant evidence regarding Plaintiff's shoulder was "prior to the period in issue." (Tr. 21). Indeed, the only problem with Plaintiff's shoulder following his November 2001 left-shoulder surgery was that he re-aggravated his shoulder while he was rowing, as Dr. Fasano reported in a February 18, 2002 treatment note. (Tr. 199). A physical therapy discharge note from only one day later showed that Plaintiff's shoulder pain was at a level of only four out of ten and he was able to perform overhead activities and work on cars. (Tr. 154). Two months later, in April 2002, Dr. Fasano noted that Plaintiff's shoulder was "doing very well," with only "some mild discomfort" and "full range of motion."

(Tr. 199). Therefore, the ALJ reasonably considered the evidence concerning Plaintiff's shoulder and determined there was "no 'severe' shoulder impairment during the period in issue." (Tr. 21).

The ALJ also clearly considered Plaintiff's daily activities during the closed period. He noted that Plaintiff reported to Dr. Bonds in early 2005 that he went to appointments, worked part-time on a sporadic basis, drove as needed, paid bills, shopped for groceries, went to the laundromat every three months, did his own cooking, and spent time on the internet looking for a job and reading his email. (Tr. 23, 220). The ALJ also considered Plaintiff's testimony, which discussed similar activities. (Tr. 23). Plaintiff points to the statements he provided in his disability application materials to suggest that he was more limited during the closed period (Doc. 11 at 9), but even in these statements, Plaintiff said he did not need help unless he was doing repairs that involved climbing or heavy lifting, and mowing his lawn before he had a riding lawn mower. (Tr. 90). These limits were accommodated in the ALJ's residual functional capacity finding. (Tr. 22).

Plaintiff essentially had the same level of impairment during and after the closed period. In fact, Plaintiff cites medical evidence to show a worsening of his shoulder, knee, hand, and cervical spine conditions prior to and during his alleged closed period of disability. (Doc. 11 at 10-11). However, he presents essentially nothing to show improvement in these conditions that would make his testimony less applicable to his activities during the closed period. Plaintiff's only explanation for his ability to return to

work in June 2006 is that a cortisone injection in May 2006 allowed him to do so as it "improved his hand impairment so much that in December 2006, he did not need another injection." (Doc. 11 at 12). Moreover, Plaintiff testified that he was not working during the closed period because he could not find a job, saying that "[n]obody seemed to want to make an offer to me for employment." (Tr. 353-54).

Accordingly, the ALJ reasonably found that "the main reason [Plaintiff] did not work during the closed period was that he was unable to find a drafting job though he was making every effort to do so." (Tr. 23). Therefore, it was reasonable for the ALJ to find that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments were not entirely credible. (*Id.*) *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.).

Plaintiff argues that the ALJ overlooked "severe clinical findings on examinations" and focused only on "the 'good' findings." (Doc. 11 at 11). However, the ALJ's decision does not omit favorable findings for Plaintiff. For instance, the ALJ cited a July 2004 examination that showed positive findings with regard to Plaintiff's right thumb. (Tr. 20). Moreover, the evidence Plaintiff cites as "severe" findings (Tr. 256, 259, 264, 267, 276, 281, 312, 320, 322, 327, 339) only shows that symptoms were present (mainly indicated by circling or checking the symptom) – the evidence does not discuss symptom severity. The evidence Plaintiff cites also included normal findings, such as the

June and October 2005 examinations where Plaintiff had normal muscle strength in all extremities and the November 2005 examination where Plaintiff had "excellent" range of motion in his knees. (Tr. 259, 276, 281). Additionally, Plaintiff does not provide any medical source opinion translating the "severe" clinical and diagnostic studies he cites into functional limitations.

Lastly, Plaintiff appears to question the ALJ's reliance on the vocational expert testimony by noting that the ALJ "did not consider the Plaintiff's past relevant work as he performed it." (Doc. 11 at 12). However, under the regulations, the ALJ was permitted to pose a hypothetical question to the vocational expert about whether a person with Plaintiff's limitations could meet the demands of Plaintiff's previous work, "either as [Plaintiff] actually performed it or as generally performed in the national economy." *See* 20 C.F.R. § 404.1560(b)(2). It was Plaintiff's burden to show that he could not perform his past relevant work, and he failed to meet his burden. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) ("Only when the claimant has established that he can no longer perform his past relevant work does the burden shift to the Commissioner to establish that the claimant retains the residual functional capacity to perform other substantial gainful activity existing in the national economy.").

While Plaintiff may disagree with the ALJ's decision, his decision is clearly within the "zone of choices" afforded to him. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision

makers can go either way, without interference."). The issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence.

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and should be affirmed.

### IT IS THEREFORE ORDERED THAT:

The decision of the Commissioner, that Joseph Jackson was not entitled to disability insurance benefits for the closed period, be found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case be **CLOSED**.

Date: 2/7/11

Timothy S. Black
United States District Judge